UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Dominick Anthony Pontiere, | C/A No.: 4:11-01521-JMC-TER |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Michael Schwartz, | |
| Defendant. | |

## PROCEDURAL BACKGROUND

The Plaintiff, Dominick Anthony Pontiere, a former pretrial detainee proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on June 23, 2011, alleging violations of his constitutional rights. On August 15, 2011, Plaintiff filed an amended complaint. (Doc. #21). At all times relevant to the allegations in the complaint, Plaintiff was a pretrial detainee at the Georgetown County Detention Center ("GCDC"). Defendant filed a motion for summary judgment on January 20, 2012. (Doc. #45). Because Plaintiff is proceeding pro se, he was advised on or about January 26, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The Plaintiff filed a response on February 22, 2012. (Doc.#48).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The Plaintiff alleges a constitutional violation due to the conditions of confinement at the GCDC. Specifically, Plaintiff alleges as follows in his amended complaint, quoted verbatim, in part:

> Americans with Disabilities Act, the ADA. 41 U.S.C. 12101-12213. Myself am diagnosed since the age of 5 yrs with learning disabilities of ADD, ADHD. And have even been diagnosed with PTSD for the past 8 yrs. I believe if anything being confined to 24/7 lockdown for 80 days has caused more damage in the long term mainly with my P.T.S.D., being Post Tramatic[sic] Stress Disorder. [2]
>
> Next I would like to insure that I was violated by a local official being either a corrections officer or an administrator . . . He was and still is working for the Georgetown County detention Center, at the time I am suing about. In this I seek compensatory damages, and or Nominal damages for this action.
>
> Courts have ruled that the Due Process Clause of the Fourteenth Amendment "incorporates" most of the Bill of Rights. Protects my rights under the First Amendment also incorporates my right under the Fourth Amendment, and even includes the [E]ighth Amendment against "Cruel and unusual punishment, including

---

[2] In his Complaint, the Plaintiff makes a conclusory allegation that his rights under the ADA were violated. Title II of the ADA, 42 U.S.C. § 12131, et seq., prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs or activities of a public entity. Title II of the ADA and the Rehabilitation apply to inmates in state prisons. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. A plaintiff seeking relief under either the ADA must present sufficient evidence to establish that 1) he has a disability, 2) he is otherwise qualified to receive the benefits of the public services, programs, or activities, and 3) he was denied the benefits of such services, programs, or activities, on the basis of his disability. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir.2005); Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999). The ADA applies to programs and services of a public entity, and a plaintiff has the burden of showing that his disability "played a motivating role" in the challenged action. Id. at 468-69. There is no allegation or showing that the Plaintiff has a disability under the ADA or that he was denied a benefit because of any disability. Accordingly, the Plaintiff's ADA claims should be dismissed.

inhumane conditions which I indoced[sic] for 80 days before being moved to General Population.

My right to basic human needs and my right to decent living conditions from when I was forced to live in booking area that was not meant[sic] to house prisoners . . . And I believe an injunction is necessary for this to be corrected because they are still housing inmates in there booking area. I also am seeking nominal damages, compensatory damages, and even punitive damages for these stated facts.

Defendants filed a motion for summary judgment along with a memorandum affidavits and exhibits in support.

## STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520

4

(1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the Plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, Plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

**AFFIDAVITS**

Michael A. Schwartz submitted his affidavit in which he attests that he is employed by the Georgetown County Sheriff's Office and assigned to GCDC. (Schwartz affidavit, doc. #45-2). Schwartz holds the rank of Chief and is the Administrator of the jail. (Id.). Plaintiff was housed in

5

a holding cell in the booking area while at GCDC as it was a protective custody area where he needed to be housed based on his past history at GCDC. (Id.). When an individual arrives at GCDC for detention, the classification department reviews the person's file if they have been detained at the GCDC before to check for any prior complaints or problems. (Id.). The Classification Department checked Plaintiff's history and discovered that he had past suicidal thoughts and had made allegations of being sexually assaulted while detained in the general population. (Id.). Therefore, based on the past situations, the Classification Department placed Plaintiff in protective custody so that he would be under direct observation due to the safety concerns related to his past history at GCDC. (Id.). Plaintiff continued to complain about being detained in the booking area and requested to be placed in the general population. (Id.). Because of his past history, Schwarltz and the Classification Department felt it necessary to maintain Plaintiff in protective custody. (Id.). Due to receiving multiple requests to return to the general population, Schwarltz and Lt. Shirley Anderson met with the Plaintiff to discuss the potential safety and security concerns of moving him to the general population. (Id.). After Plaintiff indicated he understood their concerns and consented to being returned to the general population, Plaintiff was ultimately moved from the booking area to the general population area. (Id.). Plaintiff was placed in general population on June 16, 2011, and was transferred to the South Carolina Department of Corrections on August 30, 2011. (Id.).

Defendant submitted the affidavit of Lt. Shirley A. Anderson who attests that she is employed with the Georgetown County Sheriff's Office and assigned to the GCDC. (Anderson affidavit, doc. 3 45-3). Anderson holds the rank of Lieutenant and is involved in the classification of detainees upon their arrival at GCDC. (Id.). Part of making the classification decision is to review old complaints involving the particular person being classified. (Id.). Plaintiff had been detained at GCDC on prior

occasions and, in reviewing his past history, it was discovered that he had past suicidal thoughts and made an allegation of being sexually assaulted in the general population. (Id.). Based on these issues, the Classification Department decided it best to place Plaintiff in a holding cell so that he would be under direct observation which was for the safety and security of Plaintiff. (Id.). While being detained in the booking area, Plaintiff began to make requests to be moved to general population but the Classification Department and Jail Administrator felt it necessary to keep Plaintiff housed in the booking area for his own safety. (Id.). However, after multiple requests, Anderson along with Schwartz met with Plaintiff to discuss his request and the potential problems of being moved to the general population. (Id.). Plaintiff indicated that he understood the potential safety issues and consented to being returned to the general population. (Id.). During his detention in the holding cell within the booking area, Anderson is not aware of Plaintiff suffering any injuries resulting from being housed on protective custody status. (Id.).

Defendant also submitted the affidavit of Carol Rodgers who attests that she is employed by the Georgetown County Sheriff's Office as a Licensed Practical Nurse at the GCDC. (Rodgers affidavit, doc. #45-4). Rodgers has personally seen Plaintiff in the GCDC Medical Services Department and attached Plaintiff's medical records maintained by the GCDC. (Id.). With regard to Plaintiff's allegations concerning his detention in the holding cell, Rodgers asserts Plaintiff was kept in the holding cell because of his history of mental health problems and because he was allegedly sexually assaulted while kept in the general population. (Id.). In the past, Dr. Kathleen O'Leary noted on a prescription that Plaintiff required a continuation of the holding cell due to his severe psychiatric symptoms. (Id.). On the date of his intake, March 29, 2011, Plaintiff completed the Medical Staff Receiving Screen Form and noted he was taking Zoloft and Xanax and indicated that

he was using Oxycontin, Percocet and "weed" every day. (Id.). Further, the Medical Screen Form indicated Plaintiff had attempted suicide approximately three years ago by cutting his wrist. (Id.). Based on Plaintiff's history, it was determined by the Classification Department and medical staff at GCDC that Plaintiff be maintained in a holding cell for his own safety because it was possible to closely monitor and observe Plaintiff which was a concern of the GCDC staff. (Id.). Rodgers attests that based upon her review and personal interaction with the Plaintiff, it is her opinion that Plaintiff has not suffered any physical injury resulting from his detention in the holding cell at GCDC. (Id.).

## CONDITIONS OF CONFINEMENT

As discussed, Plaintiff alleges constitutional violations in that he was housed in the holding cell located in the booking area instead of the general population while a pretrial detainee at the GCDC.[3] Confinement conditions of pretrial detainees are to be evaluated under the due process

---

[3] In his original complaint, Plaintiff alleged that he was allowed out of the holding cell every night for about 10 to 15 minutes for a shower but was denied outside recreation five days a week as stated in the GCDC rule book but had only been allowed outside about 4 times while housed in the booking area's holding cell. Plaintiff attached a copy of a grievance he filed on May 21, 2011, stating that he gets out of the cell for a shower but had not been outside in over 17 days and had been told it was because they were short staffed. (Doc. # 1). The response to his grievance stated that "Because of staff shortage no one has been given the chance to go outside." Id. However, in his complaint, Plaintiff failed to set forth any injury resulting from being denied outside recreation. In this case, there is no indication, and Plaintiff does not allege, that recreation was denied with any intent to punish. Defendant argues that Plaintiff has not shown any evidence of physical injury as a result of his conditions of confinement and cannot allege emotional injury without a prior showing of physical injury. Further, Defendant argues that Plaintiff's medical records are devoid of any injuries related to any of the alleged issues which could be construed to be related to his conditions of confinement. (Def.'s brief, p. 10).
    Plaintiff's allegations, without more, are not sufficient to state a claim. Further, Plaintiff was released back into the general population after complaining and several requests to be removed out of the holding cell. The Fourth Circuit has held § 1983 claims for lack of exercise must be supported by evidence the plaintiff sustained "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381. See

8

clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process--even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff

---

Beverati v. Smith, 120 F.3d 500 (4th Cir.1997) (holding that administrative segregation for six months with vermin; human waste; flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell; no outside recreation; no educational or religious services; and less food was not so atypical as to impose significant hardship.). To survive summary judgment, the plaintiff must show more than de minimis pain or injury. The plaintiff has failed to produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Strickler, 989 F.2d at 1380-1381. Plaintiff has failed to show that he suffered serious or significant physical or emotional injury resulting from the alleged conditions of confinement.

must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the Plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether Plaintiff was denied the minimal civilized measure of life's necessities, or that the named defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendant. Strickler, supra Further, Plaintiff has failed to show any express intent on the part of the Defendant to punish him. Based on the affidavits and medical records submitted, the Defendant along with the other employees at GCDC were keeping Plaintiff detained in the holding cell so that they could watch him due to his history of an alleged sexual attack while at GCDC and mental health concerns with history of a suicide attempt. Therefore, Plaintiff was housed in the holding cell within the booking area due to safety and security concerns for Plaintiff. Additionally, no liberty interest is created in custodial classifications. Meachum v. Fano, 427 U.S. 215, 225 (1976).

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra.

Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the
>
> Cruel and Unusual Punishments Clause. . . . Id., at 1084.

The undersigned concludes that the Plaintiff has failed to present evidence that the Defendant wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. Accordingly, it is recommended that Defendant's motion for summary judgment be granted.

## **QUALIFIED IMMUNITY**

Defendant argues that he is entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818. In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that the Defendant violated any of his clearly established constitutional or statutory rights. Therefore, Defendant is entitled to qualified immunity in his individual capacity. Thus, the undersigned recommends that the defendant's motion for summary judgment be granted on this issue.

## ELEVENTH AMENDMENT IMMUNITY

The Defendant contends that the Plaintiff's §1983 claims for money damages in his official capacity are barred pursuant to Eleventh Amendment Immunity. Defendant also argues that the action against him should be dismissed as a matter of law to the extent that he is sued in his official capacity because while acting in his official capacity as an employee of the SCDC he is not a "person" under 42 U.S.C. §1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the Defendant is/was an employee of the Georgetown County Sheriff's Department as Jail Administrator at GCDC at the time of the allegations in the complaint.

Thus, he is entitled to Eleventh Amendment immunity from monetary damages in his official capacity.

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## INJUNCTIVE RELIEF

Defendant asserts to the extent Plaintiff's complaint seeks injunctive relief, such relief should be denied and summary judgment awarded. Defendant asserts that any injunctive relief Plaintiff is seeking to be returned to the general population is moot as Plaintiff is no longer being detained at GCDC.

Since Plaintiff is no longer incarcerated at the GCDC, to the extent he has requested declaratory and/or injunctive relief, his claims are moot. Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983).

## CONCLUSION

The Plaintiff has failed to show that the Defendant violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendant (document #45) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 7, 2012
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**